UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **AIG PROPERTY CASUALTY COMPANY** | * * | **CIVIL ACTION NO. 4:19-cv-3867** |
| *Plaintiff* | * * | **JUDGE** |
| **VERSUS** | * * | **MAGISTRATE** |
| **LISA BARON BLUE and ALBERT G. HILL, III** | * * | |
| *Defendants* | * * | |

* * * * * * * * * * * * * * * *

## COMPLAINT FOR DECLARATORY RELIEF

**NOW INTO COURT**, through undersigned counsel, comes AIG Property Casualty Company ("AIG"), which files this Complaint for Declaratory Relief, seeking a judicial determination concerning its rights and obligations under Chartis Property Casualty Co.'s Homeowner Policy No. PCG 0009764376 issued to Lisa Baron Blue, in effect from August 30, 2010 to August 30, 2011; Chartis Property Casualty Co.'s Group Personal Excess Liability Policy No. 6839492, naming Lisa Baron Blue as an Additional Insured, and in effect from August 20, 2010 to July 31, 2011; and AIG Property Casualty Company's Personal Excess Liability Policy No. PCG 0021312939 issued to Lisa Baron Blue, and in effect from July 31, 2018 to July 31, 2019 (collectively the "AIG Policies").

### PARTIES

1.

A.  Plaintiff, AIG Property Casualty Company, is a foreign insurance company organized under the laws of the State of Pennsylvania with its principal place of business in New York.

1

B.  Defendant, Lisa Baron Blue, an individual of majority who was, at all relevant times, domiciled in Dallas, Texas.

C.  Defendant, Albert G. Hill, III, an individual of majority who was, at all relevant times, domiciled in Georgia.

## JURISDICTION

2.

This complaint is brought pursuant to the Declaratory Judgment Act, Title §§ 2201, 2202 of the United States Code, because there is an actual controversy among the parties. This Court also has jurisdiction over this complaint pursuant to 28 U.S.C. 1332(a) because the parties are completely diverse and the amount in controversy exceeds $75,000.

## VENUE

3.

Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action, to wit: the Underlying Lawsuit for which LBB seeks coverage under the AIG Policies, is currently pending in the 295th District Court of Harris County, Texas, which is within this judicial district.

## BACKGROUND

4.

In June 2019, Albert G. Hill, III ("Hill") filed a complaint against Lisa Baron Blue ("LBB"), and other defendants, in the 295th District Court of Harris County, Texas. Hill's Complaint asserts claims against LBB for malicious prosecution, conspiracy to commit malicious prosecution, and aiding, abetting, and substantially assisting in the commitment of

malicious prosecution of Hill (hereinafter the "Underlying Lawsuit"). A copy of the underlying complaint is attached as Exhibit "A".

5.

Hill specifically alleges that, in about 2010, LBB represented him as his attorney in connection with certain other lawsuits, including a federal civil RICO action between Hill and his father, Albert Hill Jr. Those suits arose out of a dispute over ownership or inheritance of Hill's grandmother's estates and trusts.

6.

Hill allegedly retained three attorneys, LBB, Charla Aldous and Stephen Malouf (collectively known as "BAM"), to represent him in the litigation with his father.

7.

In February 2010, a criminal complaint alleging that Hill and his wife engaged in mortgage fraud was filed against Hill with the Dallas District Attorney's Office at the behest of Hill's father.

8.

In July 2010, a fee dispute arose between BAM and Hill over the attorneys' fees BAM claimed that Hill owed them for representing Hill in the civil RICO suit and other litigation against his father. As a result, LBB moved to withdraw as Hill's attorney and, in December 2010, BAM filed a federal complaint against Hill seeking $50 million dollars in unpaid attorneys' fees, some of which were for legal work that LBB performed.

9.

In the Underlying Lawsuit Hill claims that, after she withdrew as his attorney, LBB went to great lengths to intentionally coerce or influence Dallas District Attorney Craig Watkins into

3

prosecuting the mortgage fraud claims against Hill. Hill asserts that LBB's actions were part of a larger effort to gain an advantage over Hill in the fee dispute case filed by BAM.

10.

According to Hill, LBB successfully influenced Watkins to prosecute Hill. The Dallas County Grand Jury indicted Hill and his wife on multiple charges only weeks prior to the fee dispute trial in Dallas federal court. Hill moved to stay the trial until he resolved his criminal charges. LBB and BAM opposed that motion, and the district court only granted a two-day continuance.

11.

As a result of the pending criminal indictments, Hill claims that he and his wife were advised by counsel not to testify in their own defense at the fee dispute trial. In the absence of their testimony, the federal magistrate judge entered findings of fact and conclusions of law against the Hills and in favor of LBB and BAM. In December 2011, the court entered judgment against the Hills for $21.9 million. LBB's share of the award was approximately $7.3 million.

12.

On November 16, 2012, Hill moved to quash and dismiss the indictments against him in the 204th Judicial District Court of Dallas County. In March 2013, that court dismissed all of the charges against Hill, with prejudice. Among its findings, the court concluded that LBB had improperly influenced initiation of criminal charges to gain advantage in the pending fee dispute with Hill. The court found that Hill's father and LBB exercised undue influence over Watkins, and that Watkins pursued the prosecution of Hill at their direction and at the direction of others working with them.

13.

On August 15, 2018, the Dallas Court of Appeals held that the indictments were properly dismissed with prejudice, based upon the taint of prosecutorial misconduct and the undue influence exercised over Watkins by LBB and others. The State did not appeal, and the judgment of the Dallas Court of Appeals became final with issuance of its mandate on October 26, 2018.

14.

In the Underlying Lawsuit, it is alleged that LBB procured the malicious prosecution of Hill through her actions from January 7, 2011 through April 8, 2011. It asserts that LBB conspired with others to bring about the malicious prosecution and aided, abetted, and provided substantial assistance in the malicious prosecution of Hill.

15.

The allegations against LBB in the Underlying Lawsuit make it clear that her efforts to maliciously prosecute Hill were intentional acts derived from her business pursuits.

**LBB's Claim**

16.

LBB is the Named Insured under Homeowners Policy No. PCG 0009764376 issued by Chartis Property Casualty Co., for the policy period August 30, 2010 to August 30, 2011 (the "Homeowners Policy").

17.

LBB is also an Additional Insured under the Group Personal Excess Liability Policy No. 6839492 issued by Chartis Property Casualty Co., for the policy period August 20, 2010 to July 31, 2011 (the "2010-2011 Group Personal Excess Policy").

18.

LBB is the Named Insured under the Personal Excess Liability Policy No. PCG 0021312939 issued by AIG Property Casualty Company, for the policy period July 31, 2018 to July 31, 2019 ("the 2018-2019 Personal Excess Policy").

19.

The AIG Policies respond to claims for "Personal Injury" caused by an "Occurrence" during the relevant policy period unless an exclusion or other policy provision applies to preclude that coverage.

20.

The AIG Policies define "Personal Injury" to include "malicious prosecution."

21.

Specifically, the Homeowners Policy defines "personal injury" as:

**Personal Injury** means the following injuries, or resulting death:

a. **Bodily injury;**
b. Wrongful detention, false imprisonment or false arrest;
c. Shock, emotional distress, mental injury;
d. Invasion of privacy;
e. Defamation, libel or slander;
f. Malicious prosecution;
g. Wrongful entry or eviction; or
h. Assault and battery when committed with the intent of protecting persons.

22.

The 2010-2011 Group Personal Excess Policy defines "personal injury" as:

**Personal Injury** means injury arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment;
2. Malicious prosecution;
3. Wrongful entry into, or eviction of a person from a room, dwelling or premises that the premises that the person occupies;

4. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;
5. Oral or written publication of material that violates a person's right of privacy;
6. Shock, emotional distress, mental injury;
7. Invasion of privacy;
8. Assault and battery when committed with the intent of protecting persons.

23.

The 2018-2019 Personal Excess Policy defines "personal injury" as

**Personal Injury** means the following injuries, or resulting death:

a. **Bodily injury;**
b. Wrongful detention, false imprisonment or false arrest;
c. Shock, emotional distress, mental injury;
d. Invasion of privacy;
e. Defamation, libel or slander;
f. Malicious prosecution;
g. Wrongful entry or eviction; or
h. Assault and battery when committed with the intent of protecting persons.

24.

On August 9, 2019, LBB reported the Underlying Lawsuit to AIG Property Casualty Company and sought coverage under the Homeowners Policy.

25.

AIG Personal Lines, on behalf of AIG Property Casualty Company ("AIG"), denied coverage for the claims asserted in the Underlying Lawsuit because (1) the allegations did not give rise to an "occurrence" as defined by the Homeowners Policy and (2) any coverage would be excluded due to the Business Pursuits Exclusion, the Professional Services Exclusion and/or the Intentional Acts Exclusion.

7

26.

Subsequently, LBB requested that AIG reconsider the coverage position set out in AIG's August 14, 2019 letter, and consider coverage under the 2010-2011 Group Personal Excess Policy and the 2018-2019 Personal Excess Policy.

27.

On September 20, 2019, AIG issued another letter to LBB informing her of AIG's continued position that no coverage is owed under any of the AIG Policies. AIG also notified LBB that AIG would not provide LBB with a defense or indemnity in response to the claims asserted in the Underlying Lawsuit. The denial was based upon three exclusions in the AIG Policies, including the Business Pursuits Exclusion, the Intentional Acts Exclusion and the Director's Errors or Omissions Exclusion. In addition, AIG denied coverage under the 2018-2019 Personal Excess Policy because the Underlying Lawsuit did not arise out of an "occurrence" during the policy period as defined by the policy.

28.

AIG now files this Declaratory Judgment action seeking a declaration that there is no coverage available for the Underlying Lawsuit brought against LBB, under the Homeowners Policy, the 2010-2011 Group Personal Excess Policy, and the 2018-2019 Personal Excess Policy.

**COUNT 1: DECLARATORY RELIEF UNDER
THE BUSINESS PURSUITS EXCLUSION**

29.

AIG avers that a real and justiciable controversy exists between AIG and LBB as to AIG's rights and obligations under the AIG Policies, as follows:

30.

AIG re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as though completely and fully set forth herein.

31.

The AIG Policies contain an exclusion that precludes coverage for Personal Injury arising out of the insured's Business Pursuits. That exclusion serves to bar coverage for the claims asserted in the Underlying Lawsuit.

32.

**The Homeowners Policy**

Chartis Property Casualty Co. issued Homeowners Policy No. PCG 0009764376, naming LBB as the Named Insured for the policy period August 30, 2010 to August 30, 2011 (the "Homeowners Policy"). A certified copy of the Homeowners Policy is attached hereto as "Exhibit B" and all terms of the policy are pled as if incorporated herein *in extenso*.

33.

The Homeowners Policy contains an exclusion for Business Pursuits and provides that the Homeowners Policy "does not provide coverage for liability, defense costs or any other cost or expense for:

> 11. **Business** Pursuits
>
> **Personal injury** or **property damage** arising out of an **insured person's business** property or **business** pursuits, investment activity or any activity intended to realize a profit for either an **insured person** or others. However, this exclusion does not apply to:
>     a. Volunteer work for an organized charitable, religious or community group;
>     b. **Incidental business** activity; or
>     c. Limited **Residence** Premises **Business** Liability Coverage

34.

**Business** is defined under the Homeowner's Policy as:

A part-time or full-time trade, occupation, or profession, including farming or ranching, other than **incidental business**.

35.

### The 2010-2011 Group Personal Excess Policy

Chartis Property Casualty Co. issued Group Personal Excess Liability Policy No. 6839492, naming LBB as an Additional Insured for the policy period August 20, 2010 to July 31, 2011 (the "2010-2011 Group Personal Excess Policy"). A copy of the 2010-2011 Group Personal Excess Policy is attached hereto as "Exhibit C" and all terms of the policy are pled as if incorporated herein *in extenso*.

36.

The 2010-2011 Group Personal Excess Policy provides that "this insurance shall not apply to:"

6. Business Pursuits

   **Bodily injury, property damage,** or **personal injury** resulting from **business pursuits** or any **business property** of an **Additional Insured.** This exclusion shall not apply to **bodily injury**, **property damage**, and **personal injury** arising from:

   a. Any part of a one to four-family residential dwelling or condominium that the **Additional Insured** rents or holds for rent other than the **residence premises**;
   b. Any **residence premises**:
      i. rented or held for rent in part, unless intended for use as a residence by more than two roomers or boarders per family;
      ii. occasionally rented or held for rent for short periods of time for dwelling purposes;
      iii. rented or held for rental as a private garage; or
      iv. occupied in part as an office or studio.
   c. a farm operated by an **Additional Insured** provided that it does not involve employment of others for more than 1,250 hours of farm work

10

  during the Policy Period, and does not produce more than $25,000 in gross annual revenues from the raising or care of animals or agriculture and is covered by **underlying insurance**;
 d. the use of any **private passenger automobile** for a business purpose provided it is covered by the **Required Underlying Limits of Insurance** and is not used to carry persons or property for a fee;
 e. volunteer work for an organized charitable, religious or community group.
 f. a business pursuit that does not produce gross revenues in excess of $10,000 in any year, has no employees subject to workers' compensation or other similar disability laws, and conforms to federal, state and local laws.

37.

**The 2018-2019 Personal Excess Policy**

AIG Property Casualty Company issued Personal Excess Liability Policy No. PCG 0021312939, naming LBB as a Named Insured for the policy period July 31, 2018 to July 31, 2019 ("the 2018-2019 Personal Excess Policy"). A certified copy of the 2018-2019 Personal Excess Policy is attached hereto as "Exhibit D" and all terms of the policy are pled as if incorporated herein *in extenso*.

38.

The 2018-2019 Personal Excess Policy provides that in regards to Excess Liability, "[t]his insurance does not provide coverage for liability, defense costs or any other cost or expense:" for

 6. Business Pursuits

 Arising out of an **insured person's business** property or **business** pursuits, investment activity or any activity intended to realize a profit for either an **insured person** or others.

 However, this exclusion does not apply to:
 a. Volunteer work for an organized charitable, religious or community group;
 b. **Incidental business** activity;
 c. Limited Residence Premises **Business** Liability coverage;
 d. Residences held for rentals which are listed on the Declarations Page.

11

39.

It is apparent from the face of the Underlying Lawsuit, and the allegations contained therein, that all claims against LBB arise out of her business pursuits. Hill specifically alleges in the Underlying Lawsuit that LBB encouraged the elected District Attorney of Dallas County, Texas to obtain criminal indictments against Hill and his wife as part of LBB's effort to silence the Hills and prevent them from adequately defending themselves in the separate suit that LBB and BAM had filed against them to recover attorneys' fees. It is clear from the complaint that all of LBB's actions were made for the business purpose of recovering fees LBB allegedly earned by representing Hill as his lawyer.

40.

Coverage for the allegations asserted against LBB in the Underlying Lawsuit is unambiguously excluded under the AIG Policies pursuant to the Business Pursuits Exclusion. AIG is, therefore, entitled to a declaratory judgment that no coverage for the Underlying Lawsuit exists under the AIG Policies and that AIG does not owe any duty to defend or indemnify LBB under the AIG Policies.

## COUNT TWO – DECLARATORY RELIEF UNDER THE INTENTIONAL ACTS EXCLUSION

41.

AIG avers that a real and justiciable controversy exists between AIG and LBB as to AIG's rights and obligations under the AIG Policies, as follows:

42.

AIG re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as though completely and fully set forth herein.

43.

The AIG Policies contain Intentional Acts Exclusions, which bar coverage for the Underlying Lawsuit.

44.

**The Homeowners Policy**

The Homeowners Policy provides that it "does not provide coverage for liability, defense costs or any other cost or expense for:"

17. Intentional Acts

**Personal injury** or **property damage** resulting from any criminal, willful, intentional or malicious act or omission by the insured person. We also will not cover claims for acts or omissions of any person which are intended to result in, or would be expected by a reasonable person to cause, **property damage** or **personal injury**. This exclusion applies even if the injury or damage is of a different kind or degree, or is sustained by a different person, than expected or intended. This exclusion does not apply to **bodily injury** if the **insured person** acted with reasonable force to protect any person or property.

45.

**The 2010-2011 Group Personal Excess Policy**

The 2010-2011 Group Personal Excess Policy provides that with respect to Insuring Agreement A and Insuring Agreement B, this insurance shall not apply to:

3. Intentional Acts

**Bodily Injury, property damage,** or **personal injury** caused intentionally by any person. This does not apply to any act by an **Additional Insured**:

a. While trying to prevent or eliminate danger in the use of **automobiles, recreational vehicles** or watercraft; or
b. While using reasonable force in trying to protect persons or property.

13

46.

**The 2018-2019 Personal Excess Policy**

The 2018-2019 Personal Excess Policy provides that in regards to Excess Liability, "[t]his insurance does not provide coverage for liability, defense costs or any other cost or expense:" for

7. Intentional Act

Arising out of any criminal, willful, fraudulent, dishonest, intentional, or malicious act or omission by any person, or the gaining of any profit or advantage to which an **insured person** is not entitled. We will not cover any amount for which the **insured person** is not financially liable or which are without legal recourse to the **insured person**; We also will not cover claims for acts or omissions of any person which are expected or intended to result in, or would be expected or intended by a reasonable person to cause, **property damage** or **personal injury**. This exclusion applies even if the injury or damage is of a different kind or degree, or is sustained by a different person, than expected or intended. This exclusion does not apply to bodily injury if the insured person acted with reasonable force to protect any person or property.

47.

The allegations against LBB in the Underlying Lawsuit assert intentional conduct by LBB to coerce the Dallas District Attorney, Craig Watkins, into prosecuting Hill. LBB's conduct was intentional and was made for the purpose of obtaining an advantage in her personal fee dispute case with Hill.

48.

As a matter of well-settled Texas law, a claim of malicious prosecution always involves an intentional, willful and deliberate act. Thus, the claims asserted against LBB in the Underlying Lawsuit are all the result of intentional acts for which the Policies provide no coverage.

49.

Coverage for the allegations asserted against LBB in the Underlying Lawsuit is unambiguously excluded under the AIG Policies pursuant to the Intentional Acts Exclusions. AIG is, therefore, entitled to a declaratory judgment that no coverage for the Underlying Lawsuit exists under the AIG Policies and that AIG does not owe any duty to defend or duty to indemnify LBB under the AIG Policies.

### COUNT THREE – DECLARATORY RELIEF UNDER THE DIRECTOR'S ERRORS AND OMISSIONS EXCLUSION

50.

AIG avers that a real and justiciable controversy exists between AIG and LBB as to AIG's rights and obligations under the AIG Policies, as follows:

51.

AIG re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as though completely and fully set forth herein.

52.

The AIG Policies contain Director's Errors and Omissions Exclusions, which bar coverage for the Underlying Lawsuit.

53.

**The Homeowners Policy**

The Homeowners Policy provides that it "does not provide coverage for liability, defense costs or any other cost or expense for:"

5. Directors Errors and Omissions

**Personal injury** or **property damage** arising out of any **insured person's** acts, errors or omissions as an officer or member of the board of directors of any corporation or organization. This exclusion does not apply to **personal injury** or

15

**property damage** arising out of an **insured person's** actions for a non-profit corporation or organization or for a Condominium or Cooperative Association unless another exclusion applies

54.

### The 2010-2011 Group Personal Excess Policy

The 2010-2011 Group Personal Excess Policy provides that with respect to Insuring Agreement A, this insurance shall not apply to:

4. Director's Errors or Omissions

**Bodily injury**, **personal injury** or **property damage** resulting from any act or failure to act by any **Additional Insured** as a director or officer of any organization. This exclusion does not apply to an **Additional Insured's** actions for a non-profit corporation or organization, or a condominium, cooperative or homeowner's association.

55.

### The 2018-2019 Personal Excess Policy

The 2018-2019 Personal Excess Policy provides that in regards to Excess Liability, "[t]his insurance does not provide coverage for liability, defense costs or any other cost or expense:" for

4. Director's Errors or Omissions

Arising out of any **insured person's** acts, errors, or omissions as an officer or member of the board of directors or any corporation or organization. This exclusion does not apply to an **insured person's** actions for a non-profit corporation or organization, a condominium or cooperative association or coverage provided under the Limited Charitable Board Directors and Trustees Liability coverage of this policy.

56.

LBB is an officer or member of the board of directors of Baron & Blue, a professional law corporation. It is apparent from the Underlying Lawsuit that she was acting in that capacity when she engaged in the conduct of coercing the Dallas District Attorney's Office into

16

prosecuting Hill in order to obtain an advantage in the fee dispute trial to recover unpaid attorney's fees Hill allegedly owed to LBB and Baron & Blue.

57.

Coverage for the allegations asserted against LBB in the Underlying Lawsuit is unambiguously excluded under the AIG Policies pursuant to the Director's Errors or Omissions Exclusions. AIG is, therefore, entitled to a declaratory judgment that no coverage for the Underlying Lawsuit exists under the AIG Policies and that AIG does not owe any duty to defend or duty to indemnify LBB under the AIG Policies.

## COUNT FOUR - DECLARATORY RELIEF UNDER THE 2018-2019 PERSONAL EXCESS POLICY FOR NO OCCURRENCE

58.

AIG re-alleges and incorporates by reference paragraphs the allegations set forth in the preceding paragraphs as though completely and fully set forth herein.

59.

The 2018-2019 Personal Excess Policy responds only to "personal injury" caused by an "occurrence."

60.

The 2018-2019 Personal Excess Policy provides that, for purposes of Personal Injury claims, an "occurrence" means "an offense, including a series of related offenses, committed during the Policy Period that results in **personal injury**."

61.

The 2018-2019 Personal Excess Policy does not provide coverage for offense(s) committed by the insured before July 31, 2018 or after July 31, 2019.

62.

The allegations against LBB in the Underlying Lawsuit all arise out of or were caused by acts or offenses allegedly committed by LBB between January 7, 2011 and April 20, 2011.

63.

Hill's alleged personal injuries do not arise out of acts or offenses committed by LBB during the 2018-2019 Personal Excess Policy's policy period.

64.

To be clear, the Underlying Lawsuit does not allege that LBB committed any acts or offenses during the 2018-2019 Personal Excess Policy's policy period.

65.

Coverage for the allegations asserted against LBB in the Underlying Lawsuit are unambiguously outside the scope of coverage provided by the 2018-2019 Personal Excess Policy, entitling AIG to a declaratory judgment that AIG does not owe any duty to defend or duty to indemnify LBB under the AIG Policies.

*Prayer for Relief*

WHEREFORE, AIG Property Casualty Company respectfully requests that this Court enter a judgment declaring the rights and obligations of the parties under the AIG Policies, including but not limited to the following:

(1) Declaring that the Homeowners Policy provides no duty to defend or coverage for the Underlying Lawsuit against Lisa Baron Blue;

(2) Declaring that the 2010-2011 Group Personal Excess Policy provides no duty to defend or coverage for the Underlying Lawsuit against Lisa Baron Blue.

(3) Declaring that the 2018-2019 Personal Excess Policy provides no duty to defend or coverage for the Underlying Lawsuit against Lisa Baron Blue.

(4) Awarding AIG all costs associated with this action, and for such additional relief as this Court may deem proper.

Respectfully Submitted,

_____
CHRISTOPHER R. TESKE (24081556)
CHRISTIANE (C.J.) CHAMBERS (2600069)
**GIEGER, LABORDE & LAPEROUSE, L.L.C.**
SUITE - 4800 One Shell Square
701 Poydras Street
New Orleans, Louisiana 70139-4800
Telephone:   (504) 561-0400
Facsimile:   (504) 561-1011
Email:       cteske@glllaw.com
             CChambers@glllaw.com
*Counsel for AIG Property Casualty Company*